IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **UNDER SEAL** |
| ) | |
| v. ) | |
| ) | Case No. 1:12MJ308 |
| MATTHEW SCOTT BAKER, ) | |
| JOSHUA LEONARD MALINOWSKI CLOUGHERTY,) | |
| SKANDER BOUCHAIR, ) | |
| SAJAD SAFDARI, ) | |
| SHELBY SINES NEAL, ) | |
| RYAN ANTONIO LINDE, ) | |
| PATRICK UN, and ) | |
| ETHAN PAUL WALKER, ) | |
| ) | |
| Defendants. ) | |

*[FILED stamp: MAY 3 1 2012]*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Tucker G. Vanderbunt, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I am a duly appointed Special Agent of the Federal Bureau of Investigation (FBI) and have been employed as such since October 2002. During this time, I have been assigned to Criminal Enterprise Investigation squads for approximately five years. I am currently assigned to a squad that investigates Violent Gangs and Criminal Enterprises out of the Northern Virginia Resident Agency of the Washington, D.C. Field Office. From 1995 until 2002, I was employed as a law enforcement officer of the State of Georgia, during which time I investigated federal, state, and local narcotics violations which have led to the arrest and conviction of numerous narcotics distributors.

1

2. I have participated in a number of drug trafficking and money laundering investigations conducted by the FBI and other law enforcement agencies, that resulted in the arrest of numerous subjects, the seizure of property and assets, and the seizure of controlled substances.

3. Based on my training and experience, I have become well-versed in the methodology utilized in narcotics trafficking operations, the unique trafficking patterns employed by narcotics organizations, and the language and patterns of drug abuse and trafficking. I am familiar with how the various drugs are used and the typical distribution and trafficking patterns generally used by drug dealers and traffickers.

4. This affidavit is submitted in support of a criminal complaint and an arrest warrant charging MATTHEW S. BAKER, JOSHUA LEONARD MALINOWSKI CLOUGHERTY, SKANDER BOUCHAIR, SAJAD SAFDARI, SHELBY SINES NEAL, RYAN ANTONIO LINDE, PATRICK UN, and ETHAN PAUL WALKER with conspiracy to distribute 2,000 grams or more of a mixture and substance containing a detectable amount of methylone, (3,4-methylenedioxy- N-methylcathinone),[1] a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

5. The facts and information contained in this affidavit are based upon my personal investigation and from other state and federal law enforcement officers involved in this matter, and information provided by cooperating witnesses. All observations referenced in this affidavit that were not personally made by me were related to me, either orally or in writing, by the person or persons who made such observations.

---

[1] Methylone is psychoactive chemical that is structurally and pharmacologically similar to the Schedule I substance MDMA (3,4-Methylenedioxymethamphetamine). The Drug Enforcement Agency issued a Final Order, effective October 21, 2012, categorizing methylone as a Schedule I substance on a temporary basis, subjecting it to the full effect of the Controlled Substances Act. That order remains in effect while a final determination is pending.

6. This affidavit contains information necessary to support probable cause for this application. The affidavit is not intended to include each and every fact and matter observed by me or known to the government. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

## FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

### OVERVIEW

7. The captioned investigation targets a Northern Virginia Transnational Criminal Organization (TCO) that is responsible for the distribution of kilogram quantities of methylone in Fairfax County and other areas in the Northern Virginia area, within the Eastern District of Virginia.

8. This investigation has identified a distribution network that was being supplied with "Molly"[2] by MATTHEW SCOTT BAKER. BAKER has been identified as the importer and head of the BAKER TCO distribution network in Northern Virginia. BAKER receives kilogram quantities of "Molly" from Shanghai, China, via the United States Postal Service, and has remitted U.S. currency to China via Western Union.

9. The co-conspirators who have cooperated with law enforcement and additional FCPD confidential sources ("CS") have conducted several controlled purchases of "Molly" from other members of the BAKER TCO during the course of this investigation. In each instance, law enforcement provided the cooperators with authorized funds prior to the transaction, and searched the cooperators prior to and after the transaction to ensure that they did not possess any contraband

---

[2] "Molly" is a commonly used term for powder MDMA or ecstasy. During this investigation, most of the "Molly" has field tested positive for MDMA but subsequent laboratory testing has identified the majority of the powder substance as 3,4-Methylenedioxy-N-methylcathinone (methylone).

3

or additional funds. The transactions were directed, supervised and monitored by law enforcement and/or recorded. Following each transaction, the "Molly" purchased from the co-conspirators was weighed and field tested for the presence of MDMA. In the paragraphs that follow, where it is indicated that the co-conspirators sold a particular quantity of "Molly," the substance field tested positive for MDMA and weighed approximately the amounts described below.

10. The cooperating individuals and CS's have proven to be reliable and credible through their use by law enforcement officers in this and other investigations. To my knowledge, none of the information provided to me or any other members of law enforcement by the cooperating individuals or CS's with regards to this and past investigations has proved to be false, misleading or inaccurate in any material respect. Further, the information that they have provided in this investigation has been corroborated through various independent investigative techniques and other sources, when possible.

## PATRICK UN SEARCH WARRANT

11. On January 5, 2012, FCPD executed a search warrant at the residence of PATRICK UN in Annandale, Virginia. During the search of UN's residence, approximately three ounces of "Molly," one ecstasy pill, and a quantity of marijuana were seized. On January 6, 2012, UN was arrested and taken into custody by FCPD. UN was advised of his Miranda rights and consented to speak with FCPD detectives. UN stated that he has been selling drugs on and off for about five years, but has only been selling "Molly" for six to seven months. UN also stated that he sells a capsule of "Molly" for $20 and usually puts 0.2 grams in each capsule. UN told FCPD detectives that he purchased his "Molly" from FERNANDO GOMEZ in or around October 2011. UN told FCPD detectives that he made several attempts to obtain an introduction to GOMEZ's source of

4

supply, SAJAD SAFDARI. UN ultimately met SAFDARI in or around early December 2011 and began purchasing quantities of "Molly" straight from SAFDARI. UN advised FCPD detectives that he had purchased four ounces of "Molly" from SAFDARI during the week of January 1, 2012. Upon execution of the search warrant on UN's residence, FCPD seized approximately three ounces of "Molly." UN was released by FCPD, pending his cooperation with law enforcement.

## SHELBY NEAL SEARCH WARRANT

12. On January 25, 2012, FCPD executed a search warrant at the residence of SHELBY NEAL in Reston, Virginia. During the search of NEAL's residence, approximately one pound of "Molly," a quantity of marijuana, and paraphernalia were seized. Also present at the residence were AURIEL VANNAH MITCHELL, RYAN ANTONIO LINDE, and two other individuals.

13. NEAL was advised of his Miranda rights. He waived them and agreed to speak with FCPD detectives. When asked about the white powder residue and lines on the kitchen table, NEAL advised, "I'm pretty sure it's Molly." NEAL subsequently claimed that the white powder belonged to his friends. When asked to specify who, NEAL stated, "No one here."

14. MITCHELL was advised of her Miranda rights. MITCHELL told FCPD detectives that she lives at the residence with NEAL and another individual. MITCHELL told FCPD detectives that she was NEAL's girlfriend and had been living with NEAL, sharing a bedroom, for approximately one month, and that they had been dating for approximately two years. MITCHELL advised FCPD detectives that she was aware that NEAL had been selling drugs for about four to five months. MITCHELL also told FCPD detectives that there was marijuana, "Molly," and methylone in the safe in their bedroom closet.

15. NEAL was transported to the Fairfax County Adult Detention Center and charged with Possession With Intent to Distribute Marijuana and MDMA. He subsequently contacted FCPD and agreed to cooperate with law enforcement.

### NEAL FEBRUARY 10 and 17, 2012 DEBRIEFS

16. After agreeing to cooperate with FCPD, NEAL advised FCPD detectives that prior to NEAL's arrest, NEAL was being supplied with "Molly" by an individual identified as MATTHEW SCOTT BAKER. NEAL advised that NEAL was introduced to BAKER in high school, via a mutual friend JOSHUA CLOUGHERTY. NEAL was shown a DMV photo of BAKER and confirmed BAKER's identity. NEAL provided FCPD detectives with the phone number he had been using to reach BAKER, xxx-xxx-1816. NEAL also provided FCPD detectives with two phone numbers for CLOUGHERTY, xxx-xxx-4206 and xxx-xxx-4149.

17. NEAL stated to FCPD detectives that in or around October 2011, BAKER told NEAL that he was selling "Molly." NEAL stated that he began purchasing "Molly" from BAKER at that time and conducted most of his transactions with BAKER at or in the curtilage of BAKER's residence, located in Fairfax, Virginia, within the Eastern District of Virginia. NEAL advised FCPD detectives that NEAL has purchased from BAKER, and/or that BAKER fronted him, up to four ounces of "Molly." Beginning in or around October 2011, BAKER fronted two ounces of "Molly" to NEAL every other week. In or around December 2011 through NEAL's arrest in January 2012, BAKER supplied NEAL with four ounces of "Molly" every other week. BAKER either fronted the "Molly" or NEAL purchased it, and NEAL started creating a stockpile. NEAL said that BAKER typically charged him between $600 and $800 per ounce, depending on the quality of the "Molly."

6

18. NEAL stated that BAKER distributes large quantities of "Molly" in the Fairfax County area. NEAL told FCPD detectives that in or around mid-January 2012, BAKER commented to him that BAKER had $25,000 worth of "Molly" "on front" to individuals. NEAL advised FCPD detectives that, based on his knowledge of BAKER, NEAL believed that BAKER was receiving approximately two to three pounds of "Molly" per month.

19. NEAL told FCPD detectives that he believed that BAKER purchases the "Molly" from a lab out of state and receives one to two pounds every three to four weeks. NEAL stated that on the evening of December 19, 2012, between 9:00 p.m. and 11:00 p.m., NEAL observed BAKER talk on the phone to a person whom BAKER claimed was his source of supply. NEAL advised that over the duration of his contact with BAKER, NEAL has learned that BAKER uses Western Union to wire money to a lab that is producing the "Molly."

20. NEAL told FCPD detectives that BAKER was robbed in late December 2011. BAKER did not report the robbery to law enforcement and subsequently asked NEAL if NEAL could provide him with a pistol to get revenge on the people who robbed him. NEAL said that he believes that BAKER knows the individuals who robbed him.

## JANUARY 18, 2012 CONTROLLED PURCHASE FROM SAJAD SAFDARI

21. On January 18, 2012, at the direction of law enforcement, UN communicated with SAFDARI via Facebook to coordinate the purchase of one half ounce of "Molly" with SAFDARI. That same day, at the direction of and under the surveillance of law enforcement, UN traveled to SAFDARI's residence in Springfield, Virginia. SAFDARI exited his residence and entered UN's vehicle, then returned to his residence. SAFDARI again exited his residence and entered UN's vehicle, where UN purchased approximately one half ounce of "Molly" from SAFDARI for $800 in recorded FCPD funds. SAFDARI then returned to his residence. FCPD conducted

surveillance of the purchase. Laboratory testing by the State of Virginia Laboratory indicated that the "Molly" was 13.6 grams of methylone.

### JANUARY 31, 2012 CONTROLLED PURCHASE FROM SAFDARI

22. On January 31, 2012, at the direction of law enforcement, UN communicated with SAFDARI via Facebook to coordinate the purchase of one ounce of "Molly" with SAFDARI. That same day, at the direction of and under the surveillance of law enforcement, UN traveled to SAFDARI's residence in Springfield, Virginia. SAFDARI exited his residence and entered UN's vehicle, where UN purchased approximately one ounce of "Molly" from SAFDARI for $1,400 in recorded FCPD funds. SAFDARI then returned to his residence. Laboratory testing by the State of Virginia Laboratory indicated that the "Molly" was 28 grams of methylone.

### FEBRUARY 9, 2012 SEARCH WARRANT ON SAFDARI'S RESIDENCE

23. On February 9, 2012, FCPD executed a search warrant at SAFDARI's residence in Springfield, Virginia. During the search of the residence, FCPD seized approximately one and a half kilograms of "Molly," two brown boxes with U.S. Postal Service Express Mail shipping labels, cellular telephones and paraphernalia.

24. SAFDARI lives at the residence with his mother and brother. SAJAD SAFDARI's brother, HASHMA TULLAH SAFDARI, and his brother's girlfriend were present during the execution of the search warrant. HASHMA TULLAH SAFDARI was read his Miranda rights and agreed to speak with FCPD detectives. HASHMA TULLAH SAFDARI was asked if he knew why FCPD was at his residence. HASHMA TULLAH SAFDARI replied, "My brother has a problem with marijuana and MDMA."

25. SAFDARI arrived in the driveway of the residence in a vehicle with his father during the execution of the search warrant. SAFDARI was taken into custody, along with a

8

backpack that was near him in the vehicle. A search of the backpack revealed a quantity of "Molly" and U.S. currency, which matched recorded funds used in a prior controlled purchase from SAFDARI.

26. The recipient listed on the U.S. Postal Service Express Mail shipping labels found during the search was "Matthew Baker, P.O. Box 1220 Springfield, Virginia 22151-0220." Investigation by a U.S. Postal Inspector indicated that the post office box on the labels is registered to MATTHEW BAKER, at the address of his residence in Fairfax, Virginia, telephone number: xxx-xxx-1816. Both labels listed the shipping weight as 1.2 kilograms and the contents as lauric acid.

27. Testing by the Drug Enforcement Agency Laboratory indicated that the narcotics seized during the execution of the search warrant were 1,444.88 grams of methylone and 0.46 grams of 2CE (2,5-dimethoxy-4-ethylphenethylamine, a hallucinogenic drug).

FEBRUARY 10, 2012 UNDERCOVER PURCHASE FROM MATTHEW BAKER

28. On February 10, 2012, a the direction of law enforcement, NEAL arranged a purchase of "Molly" by an undercover FCPD detective ("UC-1"), via text messaging to BAKER at xxx-xxx-1816. NEAL and UC-1 then traveled to the specified location in Fairfax, Virginia, and met with BAKER in the parking lot. UC-1 observed BAKER standing next to a grey Toyota Prius[3] in the parking lot. NEAL confirmed BAKER's identity. BAKER approached UC-1's vehicle and conversed with NEAL. BAKER then walked to his vehicle and retrieved an item from the trunk of the car. BAKER approached UC-1's vehicle and dropped a quantity of "Molly" into NEAL's lap. UC-1 took custody of the "Molly," and BAKER walked away from UC-1's vehicle, without taking payment for the "Molly." UC-1 asked BAKER if he wanted payment for

---

[3] Toyota Prius bearing Virginia Tag number XAxxxx, registered to David R. Baker of Clifton, Virginia.

the "Molly," and BAKER returned to the passenger window of UC-1's vehicle. BAKER asked UC-1, "You got it now?" and UC-1 replied affirmatively and handed BAKER $1,600 of recorded FCPD funds. UC-1 and NEAL then left the area. FCPD conducted surveillance of the purchase. UC-1 later weighed the "Molly" as approximately 66 grams. The substance field tested positive for the presence of MDMA.

## FEBRUARY 29, 2012 UNDERCOVER PURCHASE FROM BAKER

29. On February 23, 2012, NEAL contacted BAKER via AOL Instant Messenger to request four ounces of "Molly" and to ask the price. On February 28, 2012, BAKER told NEAL, via AOL Instant Messenger, that he would reserve four ounces of a new shipment of "Molly." NEAL advised UC-1 of these conversations, and UC-1 told NEAL to arrange the four ounce purchase with BAKER for February 29, 2012.

30. Upon UC-1's and NEAL's arrival near BAKER's residence in Fairfax, Virginia, on February 29, 2012, NEAL contacted BAKER, via cellular phone, at xxx-xxx-1816 to advise him that they were at the location designated for their meeting. After waiting for a neighbor to depart, BAKER approached UC-1's vehicle and entered the rear passenger's side. UC-1 provided BAKER with $2,000 in recorded FCPD funds in exchange for two sandwich bags containing approximately two ounces "Molly" each. UC-1 asked BAKER if he would have more "Molly" in another week. BAKER replied that he would have more supply in another two to three weeks. UC-1 advised BAKER that he would contact BAKER, via NEAL, at that time. UC-1 and NEAL then left the location. FCPD conducted surveillance of the purchase. The transaction was recorded on audio and video. UC-1 field tested the powder, which had a positive reaction for the presence of MDMA.

## BAKER'S MARCH 2012 ACTIVITIES

31. On March 1, 2012, BAKER contacted NEAL to ask about the possibility of UC-1 providing BAKER with a gun. BAKER advised NEAL that he would lower the price for the "Molly" if UC-1 could provide him with a gun.

32. On March 14, 2012, NEAL advised UC-1 that BAKER was holding four ounces of "Molly" for UC-1.

33. On March 19, 2012, BAKER had contacted NEAL and told NEAL that he could not conduct a transaction with UC-1 because his father had found his supply of "Molly." Later that day, BAKER again contacted NEAL and advised that he would conduct a half pound "Molly" transaction with UC-1 for $3,500. In subsequent contact on the same day, BAKER advised NEAL that he would be ready to deal with UC-1 on March 20 or March 21, 2012, at the latest. BAKER offered, through NEAL, to provide UC-1 with four ounces of "Molly" for $2,000 and to front UC-1 an additional four ounces.

34. On March 20, 2012, BAKER contacted NEAL, and BAKER advised that he could provide the "Molly" to NEAL for UC-1 right away. NEAL told BAKER that NEAL and UC-1 would meet with him later that evening. Later that day, BAKER contacted NEAL and advised that he did not get the "Molly" he had been expecting to receive. BAKER advised NEAL that he planned to get the "Molly" from JOSHUA CLOUGHERTY before, but that CLOUGHERTY was not reliable and BAKER was unable to obtain the "Molly" from him.

35. On March 21, 2012, at approximately 12:05 p.m., BAKER contacted NEAL and advised that he would know in about 20 minutes if he would have the "Molly" for a transaction on

that date. A GPS vehicle tracker[4] provided information that BAKER's Toyota Prius entered the Ravensworth Shopping Center at approximately 1:16 p.m. The Ravensworth Shopping Center is the location for the P.O. Box that is registered to BAKER. At approximately 1:30 p.m., BAKER contacted NEAL and advised that he would be unable to conduct the transaction that night.

36.     Later on March 21, 2012, BAKER contacted NEAL and advised that he was trying to conduct a "Molly" transaction with UC-1 by the following day. BAKER advised that he was trying to get in touch with CLOUGHERTY to arrange a deal between UC-1 and CLOUGHERTY. BAKER advised NEAL that he had fronted CLOUGHERTY a quantity of "Molly" and that he should be able to obtain some "Molly" from him.

37.     On March 22, 2012, BAKER contacted NEAL and advised that he was unable to contact CLOUGHERTY. At UC-1's direction, NEAL attempted to contact CLOUGHERTY. NEAL advised UC-1 that a message was left on his phone, xxx-xxx-4149, to call NEAL as soon as possible. Later that date, NEAL contacted UC-1 and advised that CLOUGHERTY had called NEAL. NEAL advised that CLOUGHERTY does not currently stay at a fixed residence and moves between hotels and motels in Northern Virginia. NEAL reported that CLOUGHERTY was staying at the Comfort Inn at 13980 Metrotech Drive, Chantilly, Virginia, and had said that he would sell UC-1 four ounces of "Molly" for $2,000.

MARCH 22, 2012 UNDERCOVER PURCHASE FROM JOSHUA CLOUGHERTY

38.     On March 22, 2012, UC-1 and NEAL drove to the Comfort Inn, located at 13980 Metrotech Drive, Chantilly, Virginia. NEAL contacted CLOUGHERTY, via cellular phone, at xxx-xxx-4149 to advise him of their arrival. UC-1 observed CLOUGHERTY walk out of the

---

[4] The tracker was installed on BAKER's vehicle on February 23, 2012, pursuant to Court order issued by the Commonwealth of Virginia on February 22, 2012.

hotel and enter UC-1's vehicle. UC-1 exchanged $2,000 in recorded FCPD funds for approximately four ounces of "Molly," divided into four bags. The transaction was recorded on audio. UC-1 field tested the powder, which had a positive reaction for the presence of MDMA.

### BAKER'S ACTIVITIES ON MARCH 23, 2012

39. On March 23, 2012, NEAL was contacted by BAKER and asked if NEAL had any news about UC-1 providing him with a gun. BAKER also advised that he had more "Molly" available if UC-1 needed it. BAKER advised that the price would be a little more, and that NEAL and UC-1 should not give CLOUGHERTY any more money because of CLOUGHERTY's $9,000 debt to BAKER.

### APRIL 17, 2012 UNDERCOVER PURCHASE FROM BAKER

40. On April 17, 2012, at approximately 11:00 a.m., UC-1 contacted BAKER, at xxx-xxx-1816, to arrange the purchase of one half pound of "Molly." BAKER advised UC-1 that he could probably get it in a half an hour. BAKER told UC-1 to come by his house on in Fairfax, Virginia, at approximately 11:30 a.m.

41. Subpoenaed toll records for BAKER's cellular phone confirms the incoming call from UC-1 at approximately 11:07 a.m. An outgoing call was then placed from BAKER to telephone number xxx-xxx-9384. Law enforcement records checks identified xxx-xxx-9384 as a cellular telephone used by KYLE BENJAMIN GRISWOLD.

42. At approximately 11:10 a.m., BAKER contacted UC-1 and advised that he could not get in touch with his friend but should be able to get the drugs by the end of the day. At approximately 11:40 a.m., UC-1 called BAKER, and BAKER told UC-1 that he was trying to get "Molly" in the next few minutes. BAKER stated that he would know for sure by noon.

13

43. At approximately 11:45 a.m., law enforcement surveillance observed BAKER leave his residence in Fairfax, Virginia, in his Toyota Prius and travel to another residence in Fairfax, Virginia. Toll records for BAKER's cellular phone identify an outgoing call placed to xxx-xxx-9384, the number registered to GRISWOLD, at approximately 11:57 a.m. BAKER was observed arriving at and entering that residence at approximately the same time. At approximately 12:02 p.m., BAKER placed an outgoing call to UC-1 advising that BAKER was "good" for the "Molly." BAKER told UC-1 to meet him at his residence. At approximately the same time, surveillance observed BAKER leave and drive back to his residence.

44. Upon the arrival of UC-1, BAKER exited his residence from the rear and entered the passenger's side of UC-1's vehicle. BAKER provided UC-1 with approximately eight ounces of "Molly" in exchange for $3,800 in recorded FCPD funds. UC-1 advised BAKER that UC-1 should have a gun for him within a week or two. The transaction was recorded on audio. UC-1 field tested the powder, which had positive reaction for the presence of MDMA.

<u>BAKER WIRE TRANSFER INFORMATION</u>

45. Between August 1, 2011 and February 28, 2012, BAKER remitted funds, via Western Union, to Shanghai, China, on 12 separate occasions. During these remittances, BAKER used the following names: MATTHEW BARKER, MATTHEW BAKES, and MATHEW BAKER. BAKER also used the following telephone numbers and addresses: xxx-xxx-1816 and xxx-xxx-6751; 1022 Ralston Avenue, Corpus Christi, Texas; one address similar to his own in Fairfax, Virginia; and his home address in Fairfax, Virginia. All remittances, with the exception of one sent from Giant Food Store at 13330 Franklin Farm Road, Herndon, Virginia, were transmitted from the same Safeway Store, located at 9525 Braddock

Road, Fairfax, Virginia. The cumulative amount of funds remitted to Shanghai, China, from BAKER totals $30,172 for the 12 identified transactions.

### FEBRUARY 8, 2012, UNDERCOVER PURCHASE FROM ETHAN WALKER

46. On February 8, 2012, CS-1 provided ETHAN PAUL WALKER with a FCPD undercover detective's ("UC-2") cellular phone number and WALKER contacted UC-2, from cellular number 703-851-9140, and arranged the transaction. WALKER told UC-2 that the price for two grams of "Molly" would be $180. They agreed on the price and to meet at WALKER's residence in Fairfax, Virginia. WALKER met UC-2 on the front porch and led him down to the basement, where he weighed out the "Molly." WALKER provided UC-2 with two grams of "Molly" in exchange for $180 in recorded FCPD funds. WALKER advised UC-2 that he can get as much "Molly" as UC-2 wants. UC-2 then left the residence and later field tested the powder, which had a positive reaction for the presence of MDMA. FCPD conducted surveillance of the purchase.

### FEBRUARY 15, 2012 UNDERCOVER PURCHASE FROM WALKER

47. On February 15, 2012, UC-2 had contact with WALKER, at cellular phone xxx-xxx-9140, and agreed to meet at WALKER's residence in Fairfax, Virginia, to conduct a transaction involving approximately five grams of "Molly" and five capsules of mescaline. Upon UC-2's arrival at WALKER's residence, WALKER exited the residence and entered UC-2's vehicle. UC-2 gave WALKER $580 in recorded FCPD funds in exchange for a ziplock bag of 25 white capsules containing "Molly" and five pink capsules containing mescaline. WALKER exited the vehicle and returned to his residence. UC-2 then left the area and later field tested the powder, which had a positive reaction for the presence of MDMA. FCPD conducted surveillance of the purchase.

## MARCH 29, 2012 ARREST OF WALKER AND CONSENT SEARCH

48. On March 29, 2012, UC-2 contacted WALKER, at cellular phone 703-851-9140, and arranged to purchase one quarter ounce of "Molly" for $450. WALKER agreed to meet UC-2 at the Target store, located at 10301 New Guinea Road, Fairfax, Virginia. UC-2 contacted WALKER, via his cellular telephone, and advised WALKER that UC-2 was at the Target parking lot.

49. After the call from UC-2, WALKER was observed by FCPD surveillance leaving his residence and walking into the Target parking lot. WALKER was subsequently taken into custody by FCPD. During the search incident to arrest, an FCPD detective found approximately one quarter ounce of "Molly" on WALKER's person.

50. WALKER was advised of his Miranda rights and waived them. He provided consent to search his residence in Fairfax, Virginia. WALKER told UC-2 during the interview following his arrest that WALKER was selling "Molly" and other drugs to supplement his income. WALKER directed UC-2 to a box in the basement of his residence and advised that everything illegal was contained within the box. UC-2 located approximately 14 grams of "Molly" and drug paraphernalia within the box. WALKER advised that the white powder in the box was "Molly," and that everything in the box belonged to him. WALKER then agreed to cooperate with law enforcement and order two ounces of "Molly" from his source of supply, SKANDER BOUCHAIR. UC-2 later field tested the powder, which had a positive reaction for the presence of MDMA.

## MARCH 29, 2012 ARREST OF SKANDER BOUCHAIR AND CONSENT SEARCH

51. On March 29, 2012, at the direction of law enforcement, WALKER ordered two ounces of "Molly" from his source of supply, BOUCHAIR. While observed by law enforcement,

WALKER contacted BOUCHAIR, at cellular telephone number xxx-xxx-2131, and asked to purchase two ounces of "Molly." BOUCHAIR agreed and told WALKER that he would come to WALKER's residence in approximately 30 minutes. BOUCHAIR arrived at WALKER's residence and was taken into custody by FCPD. During the search incident to arrest, an FCPD detective located approximately two ounces of "Molly" in BOUCHAIR's front right pants pocket.

52. BOUCHAIR was advised of his Miranda rights and waived them. He provided a statement to UC-2. BOUCHAIR advised UC-2 that the "Molly," located in his pocket, was his and that he was going to sell it to WALKER. BOUCHAIR further stated that he purchases his "Molly" from BAKER. BOUCHAIR said he believes that BAKER orders all of his "Molly" online and that BOUCHAIR pays BAKER approximately $500 per ounce. BOUCHAIR advised UC-2 that he typically purchases ten to twelve ounces "Molly" from BAKER every other week and presently owes BAKER $14,000 for "Molly."

53. BOUCHAIR advised UC-2 that he had more "Molly" stored at his residence in Fairfax, Virginia. BOUCHAIR provided UC-2 consent to retrieve the "Molly" from his residence. BOUCHAIR led UC-2 to his residence and provided UC-2 with a large ziplock bag containing approximately 12 ounces of "Molly." UC-2 later field tested the powder, which had a positive reaction for the presence of MDMA.

### APRIL 11, 2012 UNDERCOVER PURCHASE FROM RYAN LINDE

54. On April 11, 2012, CS-2 arranged for the purchase of one half ounce of "Molly" from LINDE for $700 with an FCPD undercover detective ("UC-3"). LINDE agreed to meet with UC-3 and CS-2 at an address in Chantilly, Virginia. LINDE told UC-3 that that location is the residence of a friend, but CS-2 reported that LINDE is staying there. Upon UC-3 and CS-1's arrival at the residence, LINDE met them at the front door. LINDE then advised UC-3 that the

17

"Molly" was in the basement. UC-3 accompanied LINDE to the basement and observed two scales and a quantity of "Molly" in plastic bags at a table. UC-3 provided LINDE with $700 of recorded FCPD funds in exchange for one half ounce of "Molly." UC-3 then left the residence and later field tested the powder, which had a positive reaction for the presence of MDMA. Surveillance of the undercover purchase was conducted by FCPD.

## CONCLUSION

55. Based on the foregoing, there is probable cause to believe that from on or about October 21, 2011, to on or about May 3, 2012, in Northern Virginia within the Eastern District of Virginia, and elsewhere, MATTHEW SCOTT BAKER, JOSHUA LEONARD MALINOWSKI CLOUGHERTY, SKANDER BOUCHAIR, SAJAD SAFDARI, SHELBY SINES NEAL, RYAN ANTONIO LINDE, PATRICK UN, and ETHAN PAUL WALKER did unlawfully, knowingly and intentionally conspire to distribute 2,000 or more grams of methylone, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841 (a)(1) and 846.

_____
Tucker G. Vanderbunt
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 3rd day of May, 2012.

/s/
_____
Theresa Carroll Buchanan
United States Magistrate Judge

_____
The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

18